OPINION
{¶ 1} This appeal is taken from a final judgment of the Geauga County Court of Common Pleas, Juvenile Division. Appellant, Ruth Salsgiver, appeals from the juvenile court's judgment terminating her parental right and granting permanent custody of her minor daughter to appellee, Geauga County Job and Family Services ("GCJFS").
 {¶ 2} Shilar Salsgiver ("Shilar") was born on July 13, 2000, and for the first five months of her life lived with appellant. Although Shilar's biological father, James Geisert ("Geisert"), did not live with appellant and Shilar, he often visited with the child and provided some financial support to appellant.
 {¶ 3} On December 12, 2000, appellant was admitted to the hospital after overdosing on a friend's prescription medication. The next day, GCJFS assumed physical custody of Shilar, who had been left with appellant's landlord the night before, and filed a complaint asking for emergency custody of the child based on allegations that she was dependent and neglected. The juvenile court considered GCJFS' request, and awarded the agency emergency custody.
 {¶ 4} After receiving custody of the child, GCJFS placed Shilar with a foster family in Geauga County. In February 2001, GCJFS amended its complaint to allege that Shilar was only a dependant child. Appellant then entered a plea of "true" to the complaint.
 {¶ 5} Following the February 2001 hearing, the juvenile court adopted the case plan recommended by GCJFS for reunifying both appellant and Geisert with Shilar. The case plan included the following objectives with respect to appellant: (1) complete an alcohol assessment and follow any recommendations; (2) submit to random alcohol testing; (3) accept anger management counseling; and (4) meet with an income maintenance worker to help her obtain employment and financial independence. The juvenile court later adopted an amendment to the case plan that required appellant to pay child support for Shilar while she was in GCJFS' custody.
 {¶ 6} Initially, appellant complied with the first two objectives of the case plan. For example, she followed through with an assessment for alcohol abuse, finished an intensive outpatient program, attended Alcoholics Anonymous meetings, and completed an aftercare program. Moreover, the results of the random tests demonstrated that, at that time, appellant was no longer abusing alcohol.
 {¶ 7} In July 2001, appellant was scheduled to begin individual counseling for anger management after finishing her treatment for alcohol abuse. However, she did not attend a single session with her counselor. Appellant also failed to make an effort to contact the income maintenance worker, did not take any steps to obtain consistent employment, failed to have her driver's license reinstated so that she would not have to rely on Geisert for transportation, and did not make a child support payment until after GCJFS filed a motion to find her in contempt.
 {¶ 8} Under the case plan adopted by the juvenile court, appellant received two hours of supervised visitation with Shilar each week. Before July 2001, appellant consistently exercised her visitation rights, which resulted in an award of an additional two hours of time. Appellant, however, did not take advantage of the extra visitation, as she claimed Geisert was unable to transport her to GCJFS' offices for those visits. Beginning in September 2001, appellant's attendance for the original two-hour visitations became very inconsistent. Furthermore, during this same time period, GCJFS had difficulty contacting appellant because she did not have a telephone and did not give the agency her correct address.
 {¶ 9} As a result, in late November 2001, GCJFS moved the juvenile court for permanent custody. During the two-day hearing, appellant did not submit any evidence. GCJFS, however, presented numerous witnesses in support of its request. Following the hearing, the juvenile court awarded GCJFS permanent custody and terminated appellant's parental rights. According to the court, Shilar could not be placed with appellant within a reasonable time because she had failed to remedy the conditions that had supported the original finding of dependency. The juvenile court also found that it would be in Shilar's best interest if GCJFS received permanent custody.
 {¶ 10} On appeal, we reversed the juvenile's court's judgment because the court had failed to adequately address the factors under R.C. 2151.414(D) when considering the best interest of the child. Specifically, the juvenile court did not fully discuss the nature of appellant's relationship with Shilar, as well as Shilar's wishes concerning custody. We did, however, hold that the evidence sufficiently supported the juvenile court's determination as to whether Shilar could be placed with either parent within a reasonable time. In re Salsgiver,
11th Dist. No. 2002-G-2411, 2002-Ohio-3712.
 {¶ 11} On remand, the juvenile court ordered the guardian ad litem to submit a supplemental report addressing Shilar's wishes with respect to permanent custody. After receiving the report, the juvenile court, without holding a hearing, issued a second judgment terminating appellant's parental rights and granting GCJFS permanent custody. According to the court, although appellant's bond with the child had been stronger than the bond between Geisert and Shilar, the strength of that bond had not been sufficient to motivate appellant to satisfy every one of the case plan's objectives. Moreover, the juvenile court found that Shilar had developed a strong bond with her foster parents. As for Shilar's wishes, the juvenile court again found that she was too young to express her own desires on this issue. The court did not, however, make a finding concerning whether the guardian ad litem had expressed a view on the matter.
 {¶ 12} Appellant filed an appeal of the juvenile court's judgment with this court. Among other things, she argued the following: (1) the juvenile court could not accept an additional report from the guardian ad litem because the court could only consider the evidence presented during the original hearing for permanent custody; (2) statutory law prohibited the juvenile court from accepting the report after the close of the hearing; (3) even if the juvenile court could accept the report, the court was required to hold a new hearing so that she could cross-examine the guardian ad litem on the report's contents; and (4) the juvenile court failed to make specific findings as to each of the factors set forth in R.C. 2151.414(D).
 {¶ 13} In reversing the juvenile court's judgment, this court concluded that because GCJFS could not control whether the guardian ad litem addressed Shilar's wishes in his original report, the juvenile court did not abuse its discretion in ordering the guardian ad litem to submit an addendum. Nevertheless, we held that the juvenile court erred in considering the guardian ad litem's report in an ex parte manner because a parent should always be given the opportunity to present new evidence in regard to the report and to cross-examine the guardian ad litem as to the substance of his factual findings and recommendations. Regarding whether the juvenile court fully considered every factor found in R.C. 2151.414(D), we held that the court had still failed to make a finding about the express wishes of the child concerning custody.
 {¶ 14} Accordingly, we instructed the juvenile court to conduct an additional evidentiary hearing in which appellant could cross-examine the guardian ad litem on his report and present any new evidence in response to the report's contents. Following the hearing, the court was to then issue new factual findings on the question of whether granting GCJFS permanent custody of Shilar was in the child's best interest. In reSalsgiver, 11th Dist. No. 2002-G-2478, 2003-Ohio-1203.
 {¶ 15} The juvenile court held a hearing on May 1, 2003, during which time appellant cross-examined the guardian ad litem. Following the hearing, the juvenile court issued a third judgment entry terminating appellant's parental rights and granting GCJFS permanent custody of Shilar. In doing so, the court found that although Shilar was not old enough to express a preference regarding her living arrangement, the guardian ad litem believed that it would be in the child's best interest if GCJFS received permanent custody.
 {¶ 16} From this decision, appellant filed a timely notice of appeal with this court. She now argues under her sole assignment of error that the juvenile court erred in determining that granting GCJFS permanent custody of Shilar was in the child's best interest.
 {¶ 17} Appellant first contends that the juvenile court failed to fully consider all five factors in R.C. 2151.414(D). In particular, she claims that despite finding that Shilar was not old enough to express an opinion on the question of custody, there was no evidence to that effect. Appellant submits that because Shilar is now over three-years-old, she should "be able to express some preference for her living arrangement at this point."
 {¶ 18} R.C. 2151.414, which governs the termination of parental rights, establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (1) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) the child is abandoned; (3) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; or (4) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 19} Accordingly, if the juvenile court determines that a child is not abandoned or orphaned, the focus turns to whether the child can be placed with either parent within a reasonable period of time or should be placed with the parents. Under R.C. 2151.414(E), the juvenile court must consider all relevant evidence before making this determination. After doing so, the juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 20} Assuming the juvenile court ascertains that one of the four circumstances listed in R.C. 2151.414(B)(1)(a) through (B)(1)(d) is present, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child, R.C. 2151.414(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.
 {¶ 21} We have held on several occasions that the provisions of R.C. 2151.414(D) are mandatory and "must be scrupulously observed." In reHommes (Dec. 6, 1996), 11th Dist. No. 96-A-0017, 1996 Ohio App. LEXIS 3859, at 4. See, also, In re Hill, 11th Dist. No. 2002-G-2486, 2003-Ohio-1748, at ¶ 65; In re Kelley, 11th Dist. No. 2002-A-0088, 2003-Ohio-194, at ¶ 24; In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, 2002 Ohio App. LEXIS 5613, at 12-13; In re Litz, 11th Dist. No. 2001-G-2367, 2001-Ohio-8903, 2001 WL 1402653, at 5; In reRanker (Oct. 6, 2000), 11th Dist. No. 99-P-0072, 2000 Ohio App. LEXIS 4662, at 21. "[T]he failure to discuss each of the factors set forth in R.C. 2151.414(D) when reaching a determination concerning the best interest of the child is prejudicial error." In re Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, at 13. There must be some indication in the record that the magistrate or juvenile court specifically considered each of the five factors found in R.C.2151.414(D) before making its decision. Id.
 {¶ 22} "In making its factual determinations in these types of decisions, the trial court must adequately explain its reasoning from which to permit appellate review." In re Ethington (July 23, 1999), 11th Dist. No. 98-T-0084, 1999 Ohio App. LEXIS 3419, at 7. Moreover, because the factors set forth in R.C. 2151.414(D) are all relevant to the question of whether a parent should be stripped of permanent custody every factor needs to be given proper consideration. In re Alexander
(Dec. 19, 1997), 11th Dist. No. 96-T-5510, 1997 Ohio App. LEXIS 5742, at 7. Accordingly, a "juvenile court's judgment entry that discusses some — but not all — of the factors listed in R.C. 2151.414(D) must be reversed." (Emphasis added.) Hommes at 4, citing In re Brown
(1994), 98 Ohio App.3d 337, 343.
 {¶ 23} Here, the juvenile court's judgment entry reveals that the court considered every factor in R.C. 2151.414(D). With respect to Shilar's wishes, the juvenile court stated the following:
 {¶ 24} "The child is not old enough to express a preference regarding her living arrangement, but the guardian ad litem has observed a strong bond between the child and the child's foster parents and has repeatedly recommended to the court that it is in the child's best interest that permanent custody be granted."
 {¶ 25} We agree with the juvenile court that Shilar was too young to express her wishes concerning custody. Previously, this court had observed that "Shilar was not sufficiently mature in January 2002 to express her own wishes about the `permanent custody' issue. However, the act of making a specific finding as to Shilar's capabilities was not sufficient to satisfy the trial court's duty under R.C. 2151.414(D)(2). If the trial court cannot make a finding concerning the child's wishes as expressed by her, it must then make a finding about her wishes as expressed by the guardian ad litem through his opinion as to her best interests."
 {¶ 26} At the time of the May 2003 hearing, Shilar was not quite three years old, and there is nothing in the record to indicate that she was able to express herself in such a way as to help the juvenile court make a custody decision. In fact, the child's guardian ad litem testified that Shilar was unable to express her wishes to him. Moreover, the guardian ad litem concluded that, after considering the facts, it would be in Shilar's best interest if the court granted GCJFS permanent custody.
 {¶ 27} Therefore, we cannot say that the juvenile court failed to consider every factor under R.C. 2151.414(D). Not only did the court find Shilar was unable to state her own preference, but the court also found that the guardian ad litem had given his opinion that permanent custody was in Shilar's best interest.[1]
 {¶ 28} Appellant next contends that the juvenile court's determination that it was in Shilar's best interest to grant GCJFS permanent custody was against the manifest weight of the evidence. Appellant argues that prior to removal she had kept "Shilar healthy, well-fed, and safe[,]" and that there was no evidence she abused the child. As a result, appellant submits that terminating her parental rights "was a terrible miscarriage of justice[.]"
 {¶ 29} In its judgment entry, the juvenile court initially found, by clear and convincing evidence, that although Shilar was neither abandoned nor orphaned, she could not be placed with either parent within a reasonable time. The court then proceeded to consider the best interest of the child. As part of its analysis, the juvenile court found the following:
 {¶ 30} "The court further finds by clear and convincing evidence that it is in Shilar Salsgivers [sic] best interest that permanent custody be granted to GCJFS. In reaching this decision the court has considered each factor outlined in Ohio Revised Code Section 2151.415 (D) [sic]. In addition to the proceeding findings, the court makes the following additional findings regarding the child's best interest:
 {¶ 31} "The court finds specifically that the child was approximately five months old when she was removed from her home and placed in foster care. She has consistently resided in the same home and the foster parents have expressed an interest in adopting her if the agency is granted permanent custody. The child is not old enough to express a preference regarding her living arrangement, but the guardian ad litem has observed a strong bond between the child and the child's foster parents and has repeatedly recommended to the court that it is in the child's best interest that permanent custody be granted. The guardian ad litem has also observed a lack of commitment by the child's natural parents that is consistent with this courts [sic] findings above.
 {¶ 32} "* * * A grant of permanent custody would facilitate a legally secure permanent placement of the child with little risk of disruption. * * *
 {¶ 33} "* * *
 {¶ 34} "The court finds that the child's mother did have a stronger emotional bond with the minor child. She had been observed to be more actively involved in visits with the child. In the early months of the case the child's mother was actively involved in making good progress in addressing the issues that initially caused the child to be removed from her home. Her decision to abandon her efforts to work towards reunification leaves this court to conclude that the bond between the child's mother and the child were insufficient to overcome the barriers that prevented her from achieving the goals and objectives of the case plan. Clearly, the child's bond has grown stronger over time with her foster parents. The child's bond with her natural parents has grown weaker over time.
 {¶ 35} "The court finds that the child is in need of legally secure permanent placement. The child cannot be placed back in the home of either parent, and no family member has been identified as an appropriate placement for the child. Neither parent has demonstrated the commitment or ability to provide the child with a safe and nurturing environment. A grant of permanent custody to GCJFS is necessary to place the child in a permanent home without risk of further disruption.
 {¶ 36} "The court does not find that any of the factors provided for in Ohio Revised Code Section 2151.414(E)(7), (8), (9), (10), and (11) to be applicable in this case."
 {¶ 37} After reviewing the record, we conclude that there was clear and convincing evidence to support the juvenile court's judgment. Although appellant initially made progress with respect to the case plan, at a certain point she ceased her efforts to comply in almost every respect. For example, beginning in July 2001, appellant ceased meeting with her counselor and did not maintain scheduled home visits with her caseworkers. The evidence also shows that appellant suffers from alcohol dependency and has yet to seek assistance with anger management.
{¶ 38} The record further reflects that despite GCJFS' efforts to assist appellant's reunification with her daughter, appellant was either unable or unwilling to take the necessary steps to remedy the conditions that led to Shilar's removal. Appellant did not contact the income maintenance worker, failed to secure consistent employment, and did not take the steps necessary to have her driver's license reinstated. She also failed to keep GCJFS informed of her whereabouts, and, as a result, did not make herself available for random alcohol testing.
{¶ 39} Separately, each deficiency might not justify the termination of appellant's parental rights. Taken together, however, they demonstrate a total failure to complete the objectives in the case plan. And while there may have been problems with the first pager used to contact appellant for her random alcohol tests, the record shows that even after receiving a new one, appellant still failed to maintain regular contact with GCJFS as she provided no telephone number and, on two occasions, supplied the agency with an incorrect home address.
 {¶ 40} Pursuant to the foregoing analysis, the juvenile court's determination that it was in Shilar's best interest to grant GCJFS permanent custody is supported by competent, credible evidence. Appellant's sole assignment of error has no merit. The judgment of the juvenile court, therefore, is affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., and CYNTHIA WESTCOTT RICE, J., concur.
[1] We note that the guardian ad litem did not visit Shilar between June 7, 2002, when he issued his second report and the May 1, 2003 hearing. The decision to not visit is consistent with our earlier decision in which we instructed the juvenile court to hold a hearing and allow appellant the opportunity to cross-examine the guardian ad litem on his two existing reports and to allow her to present any new evidence in response.